IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 2:11cv110-MEF |
| ) | (WO) |
| GEORGIA-PACIFIC WOOD ) | |
| PRODUCTS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff in this case alleges employment discrimination and retaliatory discharge in violation of Americans with Disabilities Act and the Civil Rights Act of 1964, as amended. Now pending before the court is the motion to compel (Doc. 39) filed by the Defendant, Georgia-Pacific Wood Products, LLC. On July 18, 2012, the court held oral argument on the motion. Upon consideration of the motion, the submissions of the parties, and the arguments made in open court, and for good cause, the court concludes that the motion to compel is due to be granted.

**Standard of Review**

Rule 26, Fed. R. Civ P., provides that, in general,

[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to

the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to a request for production, the requesting party may move for an order compelling disclosure of discovery pursuant to Rule 37, Fed. R. Civ. P.  A ruling on a motion to compel lies within the sound discretion of the trial court.  *Holloman v. Mail–Well Corp.*, 443 F.3d 832, 837 (11th Cir.2006).  "In ruling on an objection that claims of privacy or secrecy or of undue burden or expense should bar discovery, claims that could have been the basis for a motion for a protective order, the court cannot avoid taking into account the moving party's need for the inspection it seeks."  8B Charles Allen Wright and Arther R. Miller, et al., *Federal Practice & Procedure* § 2214 (3d ed.).

## Facts and Procedural History

From 1998 to 2007, Larry Anderson, a veteran of the United States Marines, worked for International Paper at a mill in Thorsby, Alabama.  (Doc. 1 ¶ 6).  In March 2007, Georgia-Pacific Wood Products, LLC ("Georgia-Pacific") took over operation of the facility. Anderson began employment with Georgia-Pacific as a maintenance technician at the mill. (Doc. 1 ¶ 7, 24). In December 2008, Georgia-Pacific administratively terminated Anderson's employment.  (Doc. 46-2).  In its December 9, 2008 letter informing Anderson of the termination, Georgia-Pacific stated that was it was terminating his employment because he had "permanent medical restrictions [that] prevent[ed] [him] from performing some or all of the essential functions of [his] regular job with or without reasonable accommodation."

2

(Doc. 46-2). Georgia-Pacific stated that Anderson had not identified any reasonable accommodation and had not provided documentation that his medical restrictions had been lifted by the doctor who had imposed those restrictions or by any other physician. (Doc. 46-2). According to Georgia-Pacific, "the only record [it] had on file" was a letter from Anderson's regular treating physician, Dr. Collins, stating that he was "permanently restricted from performing any work within [Georgia-Pacific's] facility." (Doc. 46-2).

On February 11, 2011, Anderson filed suit against Georgia-Pacific alleging that he is disabled due to permanent chronic restrictive lung disease, which restricts his ability to breathe and precludes him from exposure to dust and fumes. (Doc. 1 ¶ 16). Anderson alleges that Georgia-Pacific terminated his employment on the alleged pretext his disability could not be accommodated. (Doc. 1). Anderson alleges that he was in fact terminated due to disability discrimination and in retaliation for his opposition to racial slurs in the workplace, a gender discrimination charge filed by his wife (who also worked for Georgia-Pacific), and his opposition to gender discrimination at the mill. (Doc. 1 ¶¶ 32-42).

On July 5, 2011, Georgia-Pacific served its First Set of Interrogatories and First Request for Production of Documents to Anderson. (Docs. 40-1 & 40-2). These discovery requests included requests that Anderson identify medical care providers (including providers of psychiatric and psychological care) from whom he had received treatment for any reason or "any disability" since 2002; that he identify the reasons for seeking such treatment; and that he provide his medical and counseling records "of any type . . . from 2002 to the present"

3

and all medical documents "that relat[e] in any way to any alleged disability of the Plaintiff." *Id*. Anderson did not object to these discovery requests on any basis, and, in fact, provided some information and documents in response. (*See* Doc. 40-3 (responses to interrogatories 4 through 6); Doc. 40-4 (responses to requests for production numbers 13, 16-19)).

In the ensuing months, Georgia-Pacific sought more complete discovery responses, and Anderson supplemented his discovery responses several times. (Doc. 40-5, 40-7, 40-8, 40-9, 40-12, 40-13). In response to the various requests for medical records, including a request for medical and psychiatric treatment records dating back to 2002, Anderson stated in his supplemental responses that he "has produced signed medical releases responsive to [the requests]. If Defendant is aware of any medical providers for which Plaintiff has not signed releases, please let Plaintiff's counsel know." (Doc. 40-8, 40-9, 40-13). Again, Anderson did not object to the requests.

Other documents and interrogatory responses provided during discovery by Anderson revealed that various entities (including treating physicians, the Social Security Administration, and the Department of Veterans' Affairs ("VA")) had determined that he was disabled prior to his 2008 discharge on the basis of a number of health conditions in addition to his chronic restrictive lung disease. These additional disabling conditions included a mental health condition. (Doc. 40-18, 40-19, 40-20, 40-22).

On October 31, 2011, as part the discovery process, Anderson signed a release for medical records maintained by the VA. (Doc. 40-21). Anderson expressly requested a

4

"complete record" of "all" medical records, specifically including records pertaining to "therapy," "mental health," and "drug and/or alcohol" treatment, from "July 1998 to the present." (Doc. 40-21). When Georgia-Pacific sought to use the signed release to obtain the records from the VA in conjunction with a subpoena, the VA required Anderson to sign its own official version of a release form before it would release all of the requested records.[1]

On January 4, 2012, counsel for Georgia-Pacific sent an email to Anderson's counsel requesting Anderson to sign the VA's additional forms. (Doc. 46-1). The same day, Anderson's counsel responded via email: "Attached please find Larry Anderson's release. Please treat any documents obtained as confidential, subject to the protective order, and send us a copy of all documents." (Doc. 46-1). Again, no objection was made to the production of the requested documents, and Anderson signed the form requesting "all records 7/1/98 to the present." (Doc. 46-1).

Having received the form that it required Anderson to sign in place of the original, the VA then would not release Anderson's records pertaining to therapy, mental health, and/or drug and alcohol treatment because Anderson had failed to check the tiny boxes related to those particular records on the most-recently-attempted bureaucracy-approved medical

---

[1] According to the VA, the medical records release initially submitted to the VA by Anderson and Georgia-Pacific, which listed the name of one single attorney as the person to whom the records were to be released (Doc. 40-6 p. 9), listed "too many individuals to whom the information was to be released. Therefore it is being returned." (Doc. 40-6). In addition, although the original release was signed by Anderson, the VA apparently did not consider it to embody "the written authorization of the patient." (Doc. 40-6). However, the VA did note helpfully that it "does not wish to pose obstacles for attorneys attempting to obtain Department records in the representation of their clients" and suggested that Georgia-Pacific's attorney contact the VA for a copy of the VA's own official authorization form which, incidentally, is substantively identical to the original release form that Anderson signed in October 2011. (Doc. 40-6).

5

release form that Anderson signed in January 2012.

Georgia-Pacific then attempted to obtain Anderson's signature on the VA's sanctioned release form with all the pertinent minute boxes ticked in accordance with the VA's incredibly important procedures for the checking of boxes and the filling out of forms. Meanwhile, on April 9, 2012, this court entered a consent protective order, which protects confidential medical records obtained during discovery from disclosure to third parties. (Doc. 36).

On **June 4, 2012**, Anderson's counsel informed Georgia-Pacific's counsel via email that Anderson was not going to check the little boxes related to the release of psychological and/or substance abuse treatment records on the latest iteration of the VA-required form because he "believes that his military psychological evaluations (especially since it was a long time before he went to work for GP) are confidential and not relevant to the issues in the case.  He would like to have a judge review [them] before they are disclosed." (Doc. 46-1).

On June 20, 2012, Georgia-Pacific filed a motion to compel.  (Doc. 40).

On July 10, 2012, Anderson filed a response to the motion to compel.  (Doc. 46).

On July 18, 2012, the court held oral argument on the motion to compel.

## Discussion

A. **Medical Records Pertaining to Any Mental Health and/or Substance Abuse Treatment Mr. Anderson May Have Received Since 2002**

The parties do not dispute, and the court agrees, that the requested records pertaining

6

mental health and/or substance abuse treatment are privileged confidential medical records subject to the provisions of the protective order (Doc. 36) previously entered in this case, which precludes the distribution of confidential material to third parties. *See Jaffee v. Redmond*, 518 U.S. 1 (1996) (recognizing privilege with respect to mental health records). *Cf.* Ala. Code 34-6-2 (providing for confidentiality of a patient's communications with his mental health providers).

However, **_subject to the protective order entered in this case_**, Georgia-Pacific is entitled to discovery of Anderson's medical records pertaining mental health and/or substance abuse treatment. In reaching this conclusion, the court notes (1) Anderson's representations in his communications with Georgia-Pacific (Doc. 46-2), in his brief (Doc. 46 pp. 3-4), and during oral argument that he is willing to release the records if the court determines that they are relevant; (2) the nature of Anderson's claims, by which he has placed his mental health at issue; (3) Anderson's waiver of his objections by the unreasonable delay of nearly a full year in raising the issues of privilege, overbreadth, and relevance, and by previously agreeing to release the records; and (4) the sufficiency of the protective order previously entered in this case to prevent disclosure of the information to third parties.

1. **Anderson has Agreed to Produce the Records if the Court Determines They are Relevant**

Anderson states that he is willing to release the records if, after an *in-camera* review, the court determines that they are relevant. (Doc. 46-2, Doc. 46 pp. 3-4). However, the court

finds that a page-by-page *in-camera* review of Anderson's medical records is unlikely to be useful in determining whether the records are relevant for purposes of discovery. In this case, the record alone is sufficient for making a determination of relevance, and "[t]he Court has neither the time nor the resources to review document production in cases unless it determines in very specific and limited circumstances that such an *in camera* inspection is necessary." *U.S. v. Bahrs*, 2006 WL 2578706 at *1 (N.D. Fla. 2006); *see also U.S. v. Zolin*, 491 U.S. 554, 57 (1989) ("[W]e cannot ignore the burdens *in camera* review places upon the district courts, which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties.").

The court finds that the requested records are relevant and/or are likely to lead to the discovery of relevant evidence. *See* Fed. R. Civ. P. 26(b)(1) (generally defining the scope of discoverable documents and information). In proving a failure-to-accommodate case, "a plaintiff needs to show not only that the proposed accommodation would enable [him] to perform the essential functions of [his] job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 n.16 (11th Cir. 2007) (citations, internal quotation marks, and alterations omitted). Documents already disclosed in discovery demonstrate that Anderson's physicians, the VA, and the Social Security Administration[2] have determined that Anderson is disabled

---

[2]The court notes that Anderson receives disability payments based on the Social Security Administration's determination that Anderson has been disabled since October 2008, a date prior to his termination from Georgia-Pacific. (Doc. 40-4 p. 5; Doc. 40-14). While a successful SSDI claim does not necessarily preclude an ADA claim, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999), "an

at least in part on the basis of a mental health condition. (Doc. 40-14; Doc. 40-18; Doc. 40-19; Doc. 40-20). Dr. Collins, the doctor who notified Georgia-Pacific of Anderson's work restrictions prior to his discharge (see Doc. 46-1), has opined that chronic restrictive lung disease *and* other medical issues, including a mental health issue, have rendered Anderson unable to work since June 2008. (Doc. 40-19). Thus, mental health records would be relevant to discovery of the nature and existence of Anderson's disability and to the availability of feasible accommodations for chronic restrictive lung disease that would enable Anderson to perform his job. The records are also relevant to discovering whether, prior to his 2008 discharge, Anderson was "otherwise qualified" for his job. Therefore, Georgia-Pacific is entitled to discovery of the records, subject to the provisions of this court's protective order.

## 2. Anderson Has Waived The Psychotherapy-Patient Privilege For Purposes of Discovery in this Lawsuit By Bringing Claims that Put His Mental Health At Issue

Alternatively, Anderson has waived any privilege with respect to his mental health treatment records by bringing claims that place his mental health at issue. Anderson invokes Alabama's psychologist-patient privilege pursuant to Ala. Code § 34-26-2. *See Whatley v. Merit Distrib. Servs.*, 191 F.R.D. 655 (S.D. Ala. 2000) (applying the Alabama state law

---

ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, [he] must proffer a sufficient explanation." *Id*. at 806. In light of evidence that Anderson has an employment disability related to mental health, discovery of Anderson's mental health treatment records would be relevant to resolving the apparent discrepancy between employment disability determinations by the Social Security Administration (as well as by the VA and several treating physicians) and Anderson's burden in this case to demonstrate that, with accommodations for chronic restrictive lung disease, he is able to perform his job.

psychologist-patient privilege in state law negligence lawsuit). The court notes, however, that this case arises under federal statutes, not state law. *See* Fed. R. Civ. P. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Nevertheless, federal courts recognize a similar privilege with respect to mental health records. *See Jaffee v. Redmond*, 518 U.S. 1 (1996). This court has previously held that, "'[l]ike other testimonial privileges, the patient may of course waive the protection'" otherwise due mental health records "by putting [the patient's] mental health at issue." *Wilson v. Doss*, 2010 WL 1729111 at * 2 (M.D. Ala. 2010) (quoting *Jaffee*, 518 U.S. at 15 n.14).

In this case, Anderson's complaint alleging disability discrimination and retaliatory discharge inherently places at issue the nature and extent of his employment disability, as well as his ability to perform the essential functions of his job if provided accommodations for his chronic lung disease. Because Anderson has placed these matters at issue, and because Anderson has relied on his mental health condition in successfully seeking disability benefits from the VA and the Social Security Administration, the psychotherapist-patient privilege does not preclude Georgia-Pacific from discovery of Anderson's mental health records.

### 3.    **Anderson Has Waived His Objections**

Alternatively, the court notes that Anderson did not timely object to producing his mental health records on *any* basis. Rather than raising his objections with specificity within

30 days of receiving the discovery requests as required by Rules 34(b) and 26(b)(5)(A), Fed. R. Civ. P., Anderson waited nearly one year to notify Georgia-Pacific of his objections. In the meantime, Anderson disclosed some of the requested information, and he also affirmatively represented on several occasions that he would release the remainder of the records. (Doc. 40-3 pp. 6-7, Doc. 40-4 pp. 6-7; Doc. 40-8 pp. 7-8; Doc. 40-9 pp. 7-8; Doc. 40-13, pp. 7-9; Doc. ). In addition, *Anderson actually signed a release for these records* in October 2011 that, but for the VA's cryptic yet meticulous particularity with respect to the use of official forms, would have resulted in the discovery of these records some time last year. (Doc. 40-6 p. 9). It is absolutely clear from this record that, in diligently endeavoring for nearly one year to obtain these records, Georgia-Pacific relied on Anderson's lack of objections and on his affirmative representations that he would release the records.

Accordingly, the court concludes that Anderson has waived any objection to Georgia-Pacific's discovery of his mental health and/or substance abuse treatment records. *See Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698, 700 n.4 (S.D. Ga. 2012) ("[W]hen a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived . . . . This is true even when the party objects to disclosure because it claims that the information sought is privileged." (citations and internal quotation marks omitted)); *see also Perry v. Golub*, 74 F.R.D. 360, 363 (N.D. Ala. 1976) ("It is clear that the defendants' failure to file timely objections to the Request for Production constituted a waiver of the objections."). *Cf. Ex parte United Service Stations, Inc.*, 628 So.2d 501, 505

11

(Ala. 1993) (holding that the psychotherapist-patient privilege is waived where the holder of the privilege "objectively manifest[s] a clear intent not to rely upon the privilege"); *cf. also Whatley*,191 F.R.D. 655, 660 (S.D. Ala. 2000) (same).  Thus, Anderson's objections on grounds of privilege, overbreadth, and irrelevance do not preclude discovery of his mental health treatment records.

**B.     Disclosure of Additional Medical Providers**

Georgia-Pacific also seeks the disclosure of the identities of any additional medical providers from who Anderson has received treatment since 2002.  At oral argument, Anderson's counsel represented that he would provide this information to Georgia-Pacific. In light of Anderson's counsel's agreement to provide the identities of any additional medical providers that have not been previously disclosed, the motion to compel is moot with respect to this issue.

## CONCLUSION

For the reasons stated, it is

**ORDERED** that Georgia-Pacific's motion to compel (Doc. 39) be and is hereby granted.  Further,

Anderson is **ORDERED** to complete the additional authorization needed for the release of his VA medical records, including mental health, therapy, and/or substance abuse treatment records.

*The parties are reminded that all medical records obtained during discovery, including mental health, therapy, and/or substance abuse treatment records, are subject*

*to the protective order (Doc. 36) previously entered in this case.  The parties shall treat all such records as "confidential" pursuant to the protective order.*

Done this 23rd day of July, 2012.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE